UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

RANDLES P. TOMPKINS,

Plaintiff,

v.

SPOKANE COUNTY, WASHINGTON, CINDY NORTH JONES, and OZZIE KNEZOVICH,

Defendants.

NO. CV-07–0195-FVS

ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

**THIS MATTER** came before the Court on Defendants' October 22, 2008 motion for summary judgment. (Ct. Rec. 22). Plaintiff is represented by Richard D. Wall. Defendants are represented by James Henry Kaufman.

**BACKGROUND**

This lawsuit arises from the April 17, 2006 arrest of Plaintiff by Defendant Detective North-Jones. Plaintiff's complaint alleges civil rights violations, false arrest and imprisonment, a violation of due process rights, a failure to adequately train/supervise Detective North-Jones, assault and battery and a respondeat superior theory of liability against Spokane County. (Ct. Rec. 1).

On or about October 2005, Plaintiff and Stephanie Janzen allegedly began a romantic relationship. (Ct. Rec. 1 ¶ 9). In February 2006, Charlotte Wolverton, Ms. Janzen's legal guardian, petitioned the court for an order for protection against Plaintiff to prevent his contact with Ms. Janzen. (Ct. Rec. 1 ¶ 11). The temporary restraining order was served on February 19, 2006. *Id*.

On February 13, 2006, Plaintiff contacted the Spokane County Sheriff's Department to report suspected abuse and financial exploitation of Ms. Janzen by her mother, Ms. Wolverton. (Ct. Rec. 1 ¶ 12). Plaintiff made a report to Deputy Badicke of the Spokane Sheriff's Department. (Ct. Rec. 33 at 3). Deputy Badicke conducted an investigation and later referred Plaintiff's matter to Detective North-Jones. *Id*.

On April 5, 2006, Detective North-Jones contacted Ms. Wolverton in reference to Plaintiff's allegations of abuse. (Ct. Rec. 1 ¶ 12). Ms. Wolverton told Detective North-Jones that she was Ms. Janzen's legal guardian and that Plaintiff had been contacting Ms. Janzen against Ms. Wolverton's wishes. On April 12, 2006, Ms. Wolverton brought Detective North-Jones several items that Plaintiff had allegedly given to Ms. Janzen. (Ct. Rec. 23 at 3). Ms. Wolverton indicated to Detective North-Jones that she and other family members were fearful of Plaintiff due to these items, telephone calls and other activities which Ms. Wolverton regarded as inappropriate, harassing and outrageous. (Ct. Rec. 23 at 3).

On April 17, 2006, Plaintiff met with Detective North-Jones at Plaintiff's request. (Ct. Rec. 23 at 3). Plaintiff brought evidence with him to demonstrate that certain allegations made against him were not true and provided Detective North-Jones with a statement detailing his relationship with Ms. Janzen and a copy of numerous messages left by Ms. Janzen on his telephone voice messaging service. (Ct. Rec. 33 at 3-4). After interviewing Plaintiff for about 20 minutes, Detective North-Jones placed Plaintiff under arrest for the crime of Stalking in

violation of Wash. Rev. Code 9A.46.110. (Ct. Rec. 1 ¶ 13; Ct. Rec. 33 at 4). These charges were later dismissed. (Ct. Rec. 1 ¶ 14).

**DISCUSSION**

**I. Summary Judgment Standard**

A moving party is entitled to summary judgment when there are no genuine issues of material fact in dispute and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56; *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265, 273-74 (1986). A material fact is one "that might affect the outcome of the suit under the governing law[.]" *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A fact may be considered disputed if the evidence is such that the fact-finder could find that the fact either existed or did not exist. *Id.* at 249, 106 S.Ct. at 2511 ("all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury . . . to resolve the parties' differing versions of the truth" (quoting *First National Bank of Arizona v. Cities Serv. Co.*, 391 U.S. 253, 288-89, 88 S.Ct. 1575, 1592, 20 L.Ed.2d 569 (1968))).

The party moving for summary judgment bears the initial burden of identifying those portions of the record that demonstrate the absence of any issue of material fact. *T.W. Elec. Service, Inc. v. Pac. Elec. Contractors Assoc.*, 809 F.2d 626, 630 (9th Cir. 1987). Only when this initial burden has been met does the burden of production shift to the nonmoving party. *Gill v. LDI*, 19 F. Supp. 2d 1188, 1192 (W.D. Wash. 1998). Inferences drawn from facts are to be viewed in the light most

favorable to the non-moving party, but that party must do more than show that there is some "metaphysical doubt" as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586-87, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538, 552 (1986).

Here, the facts upon which the Court relies are either undisputed or established by evidence that permits but one conclusion concerning the fact's existence.

**II. Analysis**

Defendants move for summary judgment on Plaintiff's action in its entirety. (Ct. Rec. 22). Specifically, Defendants contend they are not liable, as a matter of law, for the allegations stemming from the arrest of Plaintiff for the crime of Stalking on April 17, 2006. (Ct. Rec. 23). Plaintiff responds that the case should not be decided on summary judgment because triable issues of fact exist. (Ct. Rec. 33).

***A. Unlawful Arrest***

Plaintiff's complaint alleges a violation of his civil rights, under 42 U.S.C. § 1983, because he was arrested without probable cause. (Ct. Rec. 1 ¶ 17). Plaintiff further alleges in the complaint that his arrest by Detective North-Jones constituted false arrest and/or imprisonment in violation of his rights under state law. (Ct. Rec. 1 ¶ 18).

"A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment, provided the arrest was without probable cause or other justification." *Dubner v. City and County of San Francisco*, 266 F.3d 959, 964 (9th Cir. 2001). Probable cause for a warrantless arrest exists when, under the totality of circumstances,

a prudent law enforcement officer would conclude there is a fair probability that the suspect has committed a crime. *United States v. Garza*, 980 F.2d 546, 550 (9th Cir. 1992). Probable cause requires a reasonable belief, evaluated in light of the officer's experience and practical considerations of everyday life that a crime has been, is being or is about to be committed. *See United States v. George*, 883 F.2d 1407, 1412 (9th Cir. 1991).

Under Washington State law, probable cause has been held to exist where the facts and circumstances within the arresting officer's knowledge and of which the officer has reasonably trustworthy information are sufficient to warrant a person of reasonable caution in a belief that an offense has been committed. *State v. Fore*, 56 Wash.App. 339, 343, 783 P.2d 626 (1989), *citing State v. Terrovona*, 105 Wash.2d 632, 643, 716 P.2d 295 (1986). The existence of probable cause is a complete defense to an action for false arrest or false imprisonment in Washington State. *Hanson v. City of Snohomish*, 121 Wash.2d 552, 563-564, 852 P.2d 295 (1993).

Here, if the undisputed facts demonstrate that, as a matter of law, probable cause existed for Plaintiff's arrest by Detective North-Jones, then Plaintiff's federal civil rights and state law false arrest claims against Detective North-Jones are without merit and Defendants' motion for summary judgment with respect to these claims should be granted. Accordingly, with respect to these claims, the issue before the Court is whether Detective North-Jones had probable cause to arrest Plaintiff. (Ct. Rec. 23 at 7; Ct. Rec. 33 at 4-5).

///

**1. Collateral Estoppel**

Defendants first argue Plaintiff is precluded from re-litigating the existence of probable cause in this action by the doctrine of collateral estoppel. Defendants' argument is based upon Spokane County District Court Judge Annette S. Plese's decision on April 18, 2006, to grant Plaintiff pretrial release on conditions. According to Defendants, by releasing Plaintiff on conditions, Judge Plese necessarily determined that probable cause existed to believe Plaintiff had committed the crime of Stalking. Plaintiff's response fails to contest Defendants' motion for summary judgment with respect to the issue of collateral estoppel. (Ct. Rec. 33).

The question of collateral estoppel is governed by state law. *See Haupt v. Dillard*, 17 F.3d 285, 288 (9th Cir. 1994). In the state of Washington, the doctrine of collateral estoppel may be invoked if:

> (1) the issue decided in the prior adjudication is identical with the one presented in the second action; (2) the prior adjudication must have ended in a final judgment on the merits; (3) the party against whom the plea is asserted was a party or in privity with the party to the prior adjudication; and (4) application of the doctrine does not work an injustice.

*Nielson v. Spanaway Gen. Med. Clinic, Inc.*, 135 Wash.2d 255, 263, 956 P.2d 312 (1998). The success of Defendants' claim of "issue preclusion" rests upon the first hurdle - - identity of issues.

Rule 3.2.1 of the Washington Court Rules regarding courts of limited jurisdiction holds that the procedure at a preliminary hearing following a warrantless arrest shall include a determination with respect to whether probable cause exists to believe that the accused committed the offense charged. CrRLJ 3.2.1. While Judge Plese made

no specific finding of probable cause on the record, Judge Plese released Plaintiff on pretrial conditions. (Ct. Rec. 14 at 73-75). At the preliminary hearing, Judge Plese summarized the "probable cause affidavit" of Detective North-Jones (Ct. Rec. 14 at 55-56), informed Plaintiff a criminal no-contact order with respect to Ms. Janzen would now be in place, entered Plaintiff's not guilty plea to the charge, set a pretrial conference on the matter, and released Plaintiff pending trial. Based on the foregoing, it appears that Judge Plese's actions at the preliminary hearing include an implied determination with respect to probable cause. Moreover, Plaintiff's response to the motion, as noted above, fails to mention or provide any basis for ruling in his favor on this issue. Thus, there is no genuine issue of material fact regarding Defendants' claim that Plaintiff is precluded from re-litigating the existence of probable cause by the doctrine of collateral estoppel. Accordingly, the doctrine of collateral estoppel precludes Plaintiff from litigating the issue of probable cause in this lawsuit.

**2. Probable Cause**

In any event, based on the undisputed facts of record, it appears probable cause existed for Plaintiff's arrest on April 17, 2006.

Plaintiff was arrested for Stalking. Under Washington law, Wash. Rev. Code 9A.46.110, the crime of Stalking is defined as follows:

> (1) A person commits the crime of stalking if, without lawful authority and under circumstances not amounting to a felony attempt of another crime:
>
> (a) He or she intentionally and repeatedly harasses or repeatedly follows another person; and

///

(b) The person being harassed or followed is placed in fear that the stalker intends to injure the person, another person, or the property of the person or of another person. The feeling of fear must be one that a reasonable person in the same situation would experience under all the circumstances; and

(c) The stalker either:

(i) Intends to frighten, intimidate, or harass the person, or

(ii) Knows or reasonably should know that the person is afraid, intimidated, or harassed even if the stalker did not intend to place the person in fear or intimidate or harass the person.

(2) (a) It is not a defense to the crime of stalking under subsection (1)(c)(i) of this section that the stalker was not given actual notice that the person did not want the stalker to contact or follow the person; and

(b) It is not a defense to the crime of stalking under subsection (1)(c)(ii) of this section that the stalker did not intend to frighten, intimidate, or harass the person.

. . .

(4) Attempts to contact or follow the person after being given actual notice that the person does not want to be contacted or followed constitutes prima facie evidence that the stalker intends to intimidate or harass the person. “Contact” includes, in addition to any other form of contact or communication, the sending of an electronic communication to the person.

Wash. Rev. Code 9A.46.110. Based on the circumstances presented, it is apparent that Detective North-Jones had sufficiently reliable evidence to cause her to believe that Plaintiff had committed the offense of Stalking.

The Spokane County Sheriff’s Office Report shows that Detective North-Jones had been informed of Plaintiff’s actions with respect to Stephanie Janzen from Deputy Badicke and, continuing that investigation, had made contact with Charlotte Wolverton, the guardian

///

of Ms. Janzen.[1] (Ct. Rec. 14 at 55-56). According to Ms. Wolverton, she and other family members were fearful of Plaintiff. Detective North-Jones was informed of Plaintiff's continued attempts to contact Ms. Janzen despite her family's repeated requests that he stay away.

It is undisputed that, on November 8, 2005, Plaintiff was advised by Ms. Janzen that her mother was going to take away her phone and "Plaintiff did not see or hear from Ms. Janzen for several months thereafter." (Ct. Rec. 33 at 2-3). However, in January of 2006, Plaintiff showed up at Ms. Janzen's hospital room and refused to leave despite her request that he leave.[2] (Ct. Rec. 14 at 56). Plaintiff nevertheless continued to call Ms. Janzen and send her cards and gifts. (Ct. Rec. 14 at 56). On the day of his arrest, Plaintiff was given *Miranda* warnings and subsequently gave Detective North-Jones statements which appeared to be untruthful.

It is apparent that Detective North-Jones, given the aforementioned information discerned from her investigation and in light of her experience, had sufficient cause to believe Plaintiff had committing the offense of Stalking as defined above. Specifically, the facts demonstrate (1) Plaintiff repeatedly contacted Ms. Janzen,

---

[1]Ms. Janzen, reportedly due to a childhood head injury, is a vulnerable adult unable to make decisions for herself. (Ct. Rec. 14 at 55-56).

[2]The report indicates as follows: "01/2006 [Ms. Janzen] is back in the hospital. [Plaintiff] showed up at the hospital but [Ms. Janzen] is confused and requests he leave but he doesn't she then goes to the bathroom hoping when she comes out he will be gone. She finds him with her phone. She tells him to leave." (Ct. Rec. 14 at 56).

(2) it is reasonable to assume Ms. Janzen had been placed in fear, and (3) Plaintiff reasonably should have known Ms. Janzen was afraid, yet continued to attempt contact with Ms. Janzen, or, at a minimum, Plaintiff had been placed on notice by Ms. Janzen that she did not want him to visit her (i.e., Ms. Janzen twice informed Plaintiff that she wanted him to leave her hospital room in January 2006). Regardless of the ultimate disposition of the criminal charges against Plaintiff, it appears there was probable cause for Detective North-Jones to believe that Plaintiff had committed the offense of Stalking and to arrest him on that charge on April 17, 2006.

**3. Qualified Immunity**

Even if probable cause was deemed to be lacking, Detective North-Jones would still be entitled to qualified immunity in this matter.

Qualified immunity shields government officials, including law enforcement officers, who are performing discretionary functions "from liability for civil damages insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *Harris v. City of Roseburg*, 664 F.2d 1121, 1127 (9th Cir. 1981) (extending the privilege of qualified immunity to police officers).

Pursuant to *Saucier v. Katz*, 533 U.S. 194, 201, 121 S.Ct. 2151, 150 L.Ed.2d 272 (2001),[3] when confronted with a claim of qualified

[3]On January 21, 2009, the United States Supreme Court receded from *Saucier* by concluding that courts need not first determine whether facts alleged by plaintiff make out a violation of a

immunity, a court should first ask the following question: "Taken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Saucier*, 533 U.S. at 201. "If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity." *Id*. "On the other hand, if a violation could be made out [under the first inquiry] on a favorable view of the parties' submissions, the next, sequential step is to ask whether the right was clearly established." *Id*. "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id*. at 202. Under this standard, if a law does not put an "officer on notice that his conduct would be clearly unlawful, summary judgment based on qualified immunity is appropriate" for those claims stemming from violations of that law. *Id*. In other words, the "contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Id*. (quoting *Anderson*, 483 U.S. at 640).

///

---

constitutional right in resolving qualified immunity claims. *Pearson v. Callahan*, --- S.Ct. ---, 2009 WL 128768. *Pearson* does not prevent courts from following the *Saucier* procedure, it simply recognizes that courts should have discretion to decide whether that procedure is worthwhile in particular cases. *Pearson* at 13. The Supreme Court held that "the judges of the district courts and the courts of appeals are in the best position to determine the order of decisionmaking [that] will best facilitate the fair and efficient disposition of each case." *Id*.

In addition, an officer is immune from suit, even when he makes a constitutionally deficient decision, if he reasonably misapprehended the law governing the circumstances he confronted. *Brosseau v. Haugen*, 543 U.S. 194, 198 (2004) (citing *Saucier*, 533 U.S. at 206). This exception is premised on the fact that it is sometimes difficult for an officer to determine how a particular legal doctrine applies to the factual situation he faces. *Saucier*, 533 U.S. at 205. In these situations, if "the officer's mistake as to what the law requires is reasonable . . . the officer is entitled to the immunity defense." *Id*. "[Q]ualified immunity operates to ensure that before they are subjected to suit, officers are on notice their conduct is unlawful. *Hope v. Pelzer*, 536 U.S. 730, 739, 122 S.Ct. 2508, 153 L.Ed.2d 666 (2002) (internal quotation marks omitted). As a result of the above-described standards, qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law." *Malley v. Briggs*, 475 U.S. 335, 341 (1986).

Here, Plaintiff had a Fourth Amendment right to be free from arrest absent probable cause. The Court must therefore determine whether a reasonable officer could have believed her conduct violated that right "in light of the specific context of this case." *Saucier*, 533 U.S. at 201. Viewing the facts in the light most favorable to Plaintiff, the inquiry in this case is whether a law enforcement officer with the information known to Detective North-Jones could reasonably have believed she had probable cause to arrest Plaintiff for Stalking. The Court finds that Detective North-Jones is entitled to qualified immunity, even if probable cause was deemed to be

lacking, because a reasonable officer could have believed that probable cause existed based on the facts discussed above. "It is inevitable," the Supreme Court has reminded us, "that law enforcement officials will in some cases reasonably but mistakenly conclude that probable cause is present, and . . . in such cases those officials-like other officials who act in ways they reasonably believe to be lawful-should not be held personally liable." *Anderson v. Creighton*, 483 U.S. 635, 641 (1987). Detective North-Jones is entitled to qualified immunity from Plaintiff's claims stemming from the arrest of Plaintiff.

Based on the foregoing, Defendants are entitled to summary judgment on Plaintiffs' unlawful arrest and state law false arrest/imprisonment claims.

***B. Due Process***

Plaintiff alleges in his complaint, without elaboration or a supporting factual basis, that Defendants' actions violated his due process rights under the Constitution of the United States. (Ct. Rec. 1 ¶ 19).

"To establish a violation of substantive due process . . ., a plaintiff is ordinarily required to prove that a challenged government action was clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare. Where a particular amendment provides an explicit textual source of constitutional protection against a particular sort of government behavior, that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing a plaintiff's

claims." *Patel v. Penman*, 103 F.3d 868, 874 (9th Cir. 1996) (citations, internal quotations, and brackets omitted), *cert. denied*, 117 S.Ct. 1845 (1997); *County of Sacramento v. Lewis*, 523 U.S. 833, 842 (1998).

In this case, the Fourth Amendment "provides [the] explicit textual source of constitutional protection . . . ." *Patel*, 103 F.3d at 874. "A claim for unlawful arrest is cognizable under § 1983 as a violation of the Fourth Amendment." *Duber*, 266 F.3d at 964. Therefore, the Fourth Amendment, rather than the Due Process Clause of the Fourteenth Amendment, governs Plaintiff's claim. Because the Court has determined that Defendants are entitled to summary judgment on Plaintiffs' unlawful arrest assertion (*see supra*), Defendants are likewise entitled to judgment, as a matter of law, on Plaintiff's unsubstantiated due process claim.

***C. Assault and Battery***

Plaintiff's complaint additionally asserts a state law claim of "assault and battery" for the conduct of Detective North-Jones. (Ct. Rec. 1 ¶ 21). Plaintiff alleges the conduct of Detective North-Jones "constitutes an unlawful assault and battery of Plaintiff without legal justification for which [Detective North-Jones] is liable to Plaintiff for all injuries proximately caused by such assault and battery." *Id*.

Though Defendants did not specifically address this claim in their motion for summary judgment, they have requested judgment on all claims asserted against them. The Court possesses the power to enter summary judgment *sua sponte*, "so long as the losing party was on

notice that she had to come forward with all of her evidence." *Celotex Corp.* 477 U.S. at 326. Because Plaintiff has argued his position both in writing and orally at the motion hearing, it is reasonable to assume Plaintiff has come forward with all of his evidence on this claim.

A battery is "[a] harmful or offensive contact with a person, resulting from an act intended to cause the plaintiff or a third person to suffer such a contact, or apprehension that such a contact is imminent"; an assault is any such act that causes apprehension of a battery. *McKinney v. Tukwila,* 103 Wash. App. 391, 408, 13 P.3d 631 (2000). It appears that Plaintiff's claim of "assault and battery" rests on allegations that Detective North-Jones somehow physically abused him during the arrest at issue in this action. However, Plaintiff has submitted no evidence to support any allegation of physical abuse, nor has Plaintiff specifically alleged an account of abuse. Plaintiff has further failed to assert that any specific injury occurred as a result of the alleged "assault and battery." Plaintiff merely indicates in the complaint that Detective North-Jones "placed Plaintiff in handcuffs and had him booked into the Spokane County Jail." (Ct. Rec. 1 ¶ 13).

"'[T]he right to make an arrest . . . necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'" *Muehler v. Mena*, 544 U.S. 93, 99 (2005). The force, however, must be "objectively reasonable" in light of the facts and circumstances confronting the officers, without regard to their underlying intent or motivation. *Graham v. Conner*, 490 U.S. 386, 397

(1989). The use of handcuffs is warranted in inherently dangerous settings to minimize the risk of harm to suspects, officers and innocent third parties. *Muehler*, 544 U.S. at 100. Because Detective North-Jones had probable cause to arrest Plaintiff (*see supra*), the use of some amount of force to effectuate Plaintiff's arrest would not be unreasonable. Since the record is devoid of any facts supporting a claim of an assault and battery, the Court finds that Plaintiff's claim of "assault and battery" shall be dismissed *sua sponte*.

***D. Supervisory Liability Claim Against Defendant Knezovich***

Plaintiff's complaint alleges the conduct of Defendant Ozzie Knezovich constitutes a failure to adequately train and supervise Detective North-Jones in the performance of her duties for which Defendant Knezovich is liable under 42 U.S.C. § 1983. (Ct. Rec. 1 ¶ 20). This claim is derivative of Plaintiff's claims against Detective North-Jones. Because Plaintiff has failed to demonstrate he suffered a federal or state law violation as a result of Detective North-Jones' actions, Defendant Knezovich cannot be found liable in a supervisory capacity. Moreover, counsel for Plaintiff conceded at the hearing on the instant motion that Defendant Knezovich should be dismissed from this action based on a lack of personal participation. Consequently, the supervisory liability claim against Defendant Knezovich shall be dismissed.

***E. Respondeat Superior Claim***

Plaintiff additionally alleges that Spokane County is liable to Plaintiff under state law for damages proximately caused by its employees as alleged in the complaint. (Ct. Rec. 1 ¶ 22). However,

because Plaintiff is not able to demonstrate a violation of his rights under state law (*see supra*), the County cannot be held vicariously liable in this case. Spokane County is therefore entitled to summary judgment on Plaintiff's respondeat superior claim.

**CONCLUSION**

Summary judgment for all named Defendants on all of Plaintiff's claims is appropriate because Plaintiff has failed to offer sufficient evidence to raise a genuine issue of material fact that any of his rights under federal or state law were violated. Accordingly, **IT IS ORDERED as follows**:

1. Defendants' October 22, 2008 motion for summary judgment for dismissal of Plaintiff's claims **(Ct. Rec. 22)** is **GRANTED**.

2. Defendants' December 1, 2008 motion to strike **(Ct. Rec. 39)** is **DENIED as moot.**

3. Defendants' January 29, 2009 motion to strike **(Ct. Rec. 47)** is **DENIED as moot.**

**IT IS SO ORDERED.** The District Court Executive is hereby directed to enter this order, provide copies to counsel, **enter judgment in favor of Defendants** and **close the file**.

**DATED** this 30th day of January, 2009.

S/Fred Van Sickle
Fred Van Sickle
Senior United States District Judge